Marvin **BOYDE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 47629.

Court of Criminal Appeals of Texas.

Sept. 18, 1974.

Vincent W. Perini, Dallas, for appellant.

Henry Wade, Dist. Atty. and Wm. L. Hubbard, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. After the jury returned a verdict of guilty, punishment was assessed by the court at life.

Appellant was convicted under an indictment charging him with the murder of his ten-month-old son on June 26, 1972, "by choking him with a towel."

Appellant urges thirty-three grounds of error. In view of our disposition of this case, we find it unnecessary to discuss all of appellant's contentions.

In his eleventh ground of error, appellant urges that the court erred in refusing to grant a mistrial when the "prosecutor deliberately repeated a prejudicial question about termination of the marriage, which had been ruled objectional (sic)."

The record reflects that the following occurred during direct examination of appellant's wife by the prosecutor:

"Q. (By Mr. Gay) . . . Have you presently filed for divorce?

"A. Yes, sir, I have."

Appellant's objection to the foregoing was sustained and, pursuant to his request, the court instructed the jury to disregard the testimony "concerning the filing of a suit for divorce."

Immediately following the court's ruling and instruction, the record reflects the prosecutor asked the following question of appellant's wife:

"Q. (By Mr. Gay) All right. Geraldine, is it your intention at this time to ever live with or have any relationship with Marvin Boyde [appellant]?"

Appellant's objection to the foregoing was sustained and the jury was instructed to disregard the question. Appellant's motion for mistrial was overruled.

In Hatke v. State, 455 S.W.2d 310, this Court quoted from Sample v. State, 158 Tex.Cr.R. 200, 254 S.W.2d 401, where it was stated:

"It has been the consistent holding of this court that proof of prior marriages and divorces is not admissible unless such evidence tends to solve some disputed issue in the case . . . ."

While appellant's objection is directed to the filing of a divorce by appellant's wife after the homicide in question, such testimony did not tend to solve any disputed issue in the case and was clearly damaging to appellant.

In his thirteenth contention appellant urges "it was error to refuse a mistrial when the prosecutor ignored the court's instruction not to ask the police officer his opinion of defendant's guilt."

The record reflects the following occurred on re-direct examination of Officer Tramel of the Dallas Police Department, who had previously testified to events occurring at the scene of the arrest as well as to the fact that he had had a conversation with appellant after the arrest enroute to the jail.

> "Q. (By Mr. Gay) Officer, I will ask you if at the time you made your investigation and made the arrest in this case, you were totally satisfied with (sic) the Defendant, Marvin Boyde, was guilty of this murder?"

Appellant's objection to the question was sustained, the court instructed the jury to disregard the question, and appellant's motion for mistrial was overruled.

Despite the court's ruling, the prosecutor then asked:

> "Q. (By Mr. Gay) Officer, do you know of any evidence in this case known to you which would tend to exonerate or show that the Defendant, Marvin Boyde, is not guilty of this offense?"

Appellant's objection to this question was sustained, and instruction to the jury to disregard same was given by the court. Appellant's motion for mistrial was overruled.

■ While this Court has recognized "for all practical purposes, the 'invasion of the province of the jury' rule is and has been long dead,"[1] it should be noted that the expression of guilt or innocence in this case was a conclusion to be reached by the jury based upon the instruction given them in the court's charge, coupled with the evidence admitted by the judge through the course of the trial. Thus, no witness was competent to voice an opinion as to guilt or innocence.

■ This Court seldom reverses a conviction solely because an improper question is asked, Mitchell v. State, 455 S.W.2d 266. In *Mitchell,* this Court quoted from White v. State, 444 S.W.2d 921, where it was stated:

> "An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds [additional authorities omitted]."

In the instant case, the prosecutor chose to ask in essence a question the court had already ruled impermissible. This, appellant's counsel was twice required to object to a question about the investigating officer's opinion as to appellant's guilt. This, coupled with the fact that it had already been made known to the jury that the officer-witness had a conversation with appellant after the arrest that was not admissible, could only lead to harmful conclusions and implications that would be extremely difficult to remove from the jury's mind by the court's instructions. See Smith v. State, 133 Tex.Cr.R. 382, 111 S.W. 2d 275.

■ Two of appellant's contentions relate to the prosecutor's argument about what was said before the grand jury.

It would appear that the complained-of argument began by answering appellant's argument (which does not appear in the record), but before it was concluded went beyond the bounds of invited argument.

The record reflects the following occurred during the argument of the prosecutor:

> "(Mr. Gay) Well, Mr. Martin says he told you, perhaps I misunderstood his statement he says that he told you that

---

1. Hopkins v. State, 480 S.W.2d 212.

Geraldine Boyde told the Grand Jury that a towel was used. *Well, now, I know what was said in the Grand Jury, and I can't tell you,* but Mr. Martin is making that up, or once again, he is thinking out loud. He doesn't know that she told the Grand Jury that. But the Grand Jury had other witnesses other than Geraldine Boyde. *The Grand Jury was able to hear things from the police officer, Officer Tramel, that you couldn't hear.* And Officer Tramel—

"(Mr. Martin) Now, Judge, now we object to that.

"(The Court) Sustain the objection.

"(Mr. Martin) We ask the Court to instruct the Jury to disregard that.

"(The Court) Disregard whether or not they could hear or could not hear, and any specific reference to that, of course, we are all acquainted and well know the law concerning the Grand Jury. I do have the instructions, ladies and gentlemen, in the Charge. *You are not to consider the Indictment for any purposes other than evidentiary purposes.* And you will disregard as to what the Grand Jury may or may not have heard, anything specifically along—" (Emphasis supplied)

The argument of the prosecutor entered the impermissible area of conveying to the jury that there was evidence of guilt other than that which was before the jury. Clayton v. State, Tex.Cr.App., 502 S.W.2d 755; Fowler v. State, Tex.Cr.App., 500 S.W.2d 643. While it would appear to have been inadvertent, the unfortunate statement of the court to the jury, "You are not to consider the Indictment for any purposes other than evidentiary purposes," could have only served to compound the error.

█ Appellant contends the following argument of the prosecutor requires reversal:

"(Mr. Gay) . . . Mr. Martin stated that Mr. Ovard and I are just down

here, I guess the insinuation is kind of learning how to practice law, and we will be out on the other side. He said they prosecute now, and then later on they defend. Well, ladies and gentlemen, I will tell you one thing in response to that, you will never find me defending criminals in this or any other County. You will never find me accepting stolen money, stolen merchandise as a fee. You will never find me standing up here and trying to get a murder—"

As heretofore noted, the argument of defense counsel is not in the record before us, but the response of the prosecutor goes beyond that which was invited by the alleged argument of defense counsel.

In Bray v. State, 478 S.W.2d 89, this Court held that the prosecutor's argument to the jury that he was grateful that he did not have to make his living representing the likes of defendant constituted reversible error. Summers v. State, 147 Tex.Cr. R. 519, 182 S.W.2d 720 was cited in the *Bray* case, in which it was stated:

"By this argument the prosecuting attorney was striking at the appellant over the shoulders of his counsel in an endeavor to inflame the minds of the jury to his prejudice. The accused is entitled to a fair trial without reference to outside influence."

In the instant case, objection was made by appellant and sustained by the court, and no further relief was requested. In *Bray,* it was stated:

"If it can be argued that the error [prosecutor's argument] was not properly preserved, we conclude that an instruction to disregard would not have sufficed to have removed the prejudice."

Thus, in the instant case, even if instruction to disregard had been requested and granted, the prejudicial effect of the prosecutor's argument would not have been removed.

Following the court's ruling on the foregoing argument, the record reflects that the prosecutor argued as follows:

"(Mr. Gay) Well, Mr. Martin told you some day I would be out practicing criminal defense law, ladies and gentlemen, that's his opinion. As he said, he was thinking out loud. I think I have a right to think out loud and I will tell you that you will never see Ed Gay doing that. You will never see me doing that."

In Bray v. State, supra, this Court quoted from the Canons of Ethics, Vernon's Ann.Civ.Stat., vol. 1A, art. XIII, Sec. 3, where it is stated:

"5. Defense of Prosecution of Those Accused of Crime. It is the right of a member [of the bar] to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused. Having undertaken such defense, a member is bound by all fair and honorable means to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty but by due process of law."

The *Bray* opinion noted:

"It is widely recognized that these canons of ethics are not generally understood by the public from which the members of the jury panel are drawn. Many do not believe an attorney should undertake the defense of a person charged with a crime particularly if there is some indication that the defendant is guilty."

This general misunderstanding by the public serves to contribute to the prejudicial effect of an argument by a prosecutor which strikes at a member of the bar for representing a person accused of crime.

A number of appellant's contentions relate to the prosecutor's reference to an inadmissible oral confession.

The record reflects the following occurred during cross-examination of appellant:

"Q. [Mr. Gay, prosecutor] Why did you tell Officer Tramel and Officer Chapman that you put the baby in the bed with you and wrapped the cup towel around its neck and tightened the cup towel and killed it?

"A. [Appellant] I did not say no such thing like that to no officer."

Appellant's objection to the foregoing was sustained.

Despite the fact that the court sustained the objection thereto, the prosecutor almost immediately thereafter asked appellant:

"Q. Are you swearing under oath that you did not tell the police officers that you choked the baby with the towel?"

Subsequently, out of the presence of the jury, Officer Tramel testified that after appellant was taken to the "Homicide and Robbery Bureau on the third floor of the City Hall" and warned of his rights, appellant made an oral statement in which he confessed he choked the baby with a cup towel.

The court sustained appellant's objection to the admission of such oral confession. It was neither admissible as original evidence nor for impeachment purposes. Butler v. State, Tex.Cr.App., 493 S.W.2d 190; McBride v. State, Tex.Cr.App., 506 S.W.2d 887; Martinez v. State, Tex.Cr.App., 498 S.W.2d 938; Harrison v. State, Tex.Cr.App., 491 S.W.2d 920.

At a later juncture the record reflects that the prosecutor asked Officer Tramel the following question regarding what happened when the officer took appellant to City Hall:

"Q. Were all conversations had, had only between the Defendant and you and Officer Chapman?

"A. Yes, sir.

\*      \*      \*      \*      \*      \*

"Q. Did you record the contents of these conversations on your arrest reports?

"A. I did.

\*   \*   \*   \*   \*   \*

"Q. Does this contain the statements made by this Defendant to you at City Hall?

"A. Yes, sir."

In the prosecutor's argument to the jury, the record reflects the following:

"(Mr. Gay) I will tell you what the key to this whole thing, I know you have the feeling that there is some information here. You have heard testimony without objection and there was some conversation had between the Defendant and the police officers."

Appellant's objection to the foregoing argument was overruled and the prosecutor then argued:

"(Mr. Gay) . . . I asked Officer Tramel were there conversations had at the Police Department. There was no objection to that question nor that answer. And the answer was, 'Yes, there were'. I asked him, and this was because Mr. Martin asked Officer Tramel here in the Court if he would go and get a copy of the hand-written report Mr. Tramel made out."

In his objection, appellant noted that he had asked the officer to get his papers to "tell us the date and hour that he went out there." Appellant's objection was sustained and the prosecutor was admonished:

"(The Court) Mr. Gay, you know the rulings that have been previously made concerning, and the subject matter in which you have predicated your statement on. And I will ask you to stay within the framework of those objections and will expect you to abide by the rulings that have been made concerning it."

The prosecutor again referred to what the appellant had told the officer and stated that the officer said "that he had it all written down in his report."

The court then admonished the prosecutor:

" . . . And, Mr. Gay, I have asked, and I am not going to do it again, to stay, within the framework of these rulings."

After appellant had been cross-examined relative to what was later ruled to be an inadmissible statement by appellant, the prosecutor continued to refer to such statement made by appellant to arresting officers at City Hall.

■ A review of the record in this cause reflects numerous instances when the prosecutor attempted to circumvent the rulings of the court in both the presentation of evidence and argument to the jury.

It is regrettable that the prosecutor found it necessary to pursue a course of repeatedly attempting to place matters before the jury which were clearly impermissible. The conduct of the prosecutor could have served no purpose other than to inflame and prejudice the minds of the jurors. Such prosecutorial misconduct cannot be labeled harmless and requires the reversal of a conviction of a brutal and senseless murder. See Stein v. State, Tex.Cr.App., 492 S.W.2d 548; Renn v. State, Tex.Cr.App., 495 S.W.2d 922.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.