Tillis v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-041-CR

     OMAR SHAWN TILLIS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 94-247-C
                                                                                                    

O P I N I O N
                                                                                                    

      Omar Tillis was charged with capital murder after Randy Warren was shot and killed. The
State waived the death penalty, and after a jury found Tillis guilty, the court assessed the
mandatory sentence of life imprisonment. 
      1610 Bagby in Waco was a crack house. On January 9, 1994, sixteen-year-old Randy Warren
was shot and killed there. The evidence shows that Jean Weatherby had gone there, as she had
done before, to buy cocaine. The time was about 10:30 p.m. Jean went into a bedroom where
Jesse Clark, whom she did not know, was sitting on a bed. After a few minutes Randy Warren,
whom she had seen at the house on earlier occasions, came into the bedroom. As the three of
them talked, Jean saw an arm and hand, holding a pistol, come through a curtain. The gun
discharged, and Jesse "just kind of laid over." She said that Tillis, whom Jean did not know,
came into the bedroom from behind the curtain. As he passed through the room, Randy tried to
leave, and Tillis also shot him. As Tillis was going through Jesse's pockets, Jean left the
bedroom, stepping over Randy, and departed through the back door.
      Jesse testified that he saw the gun coming through the curtain, then saw a face just before he
was shot. He said he was "playing dead" when the gunman went through his pockets and took his
car keys. After he heard the second shot and someone say, "Come on, let's go," he jumped up
and ran out the back door. Jesse said that the face he saw belonged to Tillis.
      Tanya Able said that she and Andrea Ball had been with Tillis and two other men earlier in
the evening, and Tillis had made reference to having a gun. Tillis, who was driving, parked near
Bagby and told them, "No matter what you hear, no matter what you see, ya'll don't say a f-------
word." The men left the car and went down the street. Tanya said that, when they heard shots,
she and Andrea drove off.
      Tillis testified that he had gone to the Bagby house to buy drugs—$300 worth. He talked to
Jesse, who showed him some drugs, but when they could not agree on an amount of drugs, Tillis
left. He decided to rob Jesse and went to find his friend, Jason Coleman (J.J.), whom he knew
had a gun. Tillis testified that J.J. was supposed to hold the gun on Jesse while Tillis went
through his pockets. Tillis said J.J. "[w]asn't supposed to shoot anybody." They went back to
Bagby, but Jesse was not there. They returned later, after seeing Jesse's car outside. According
to Tillis, when they went in the house, J.J. told Jesse to "drop out"—a street term for a robbery. 
Tillis said he heard two shots, got scared, and ran out. He said he saw J.J. going through Jesse's
pockets.
      Other witnesses were called to either prove or disprove that Tillis had the weapon. The court
charged the jury on the theories of parties and conspiracy and included a charge on the lesser-included offense of aggravated robbery. As noted above, the jury found Tillis guilty of capital
murder.
      Tillis assigns four points of error, all arising out of the State's closing argument. The State
points out, and Tillis agrees, that no objection was made in any of the four instances; thus, none
of the arguments will result in reversal unless found to be so prejudicial that an instruction to
disregard would not have cured any harm that might have resulted. See Briddle v. State, 742
S.W.2d 379, 389 (Tex. Crim. App. 1987), cert. denied, 488 U.S. 986, 109 S.Ct. 543, 102
L.Ed.2d 573 (1988). Error in jury argument is not waived by a failure to object where the
argument is manifestly improper, violates some mandatory statute, or injects some new fact
harmful to the defendant's case. Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989),
cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). In determining whether a
statement is manifestly improper, harmful, and prejudicial, we look at the record as a whole. Id.
      Two of Tillis' complaints assert that the prosecutor "struck at him over the shoulders of
counsel." The other two assert error when the prosecutor injected his personal opinion into the
argument. We will review these complaints in the light of the entire record, including Tillis' own
testimony that he engaged in a conspiracy to rob Jesse. Even if we assume that the jury accepted
Tillis testimony that J.J. had the gun, we must still consider that he judicially admitted each and
every element of the theory of capital murder on which the court charged the jury, with the
possible exception of J.J.'s intent to kill Randy.
      Proper jury argument falls within one of the following categories: (1) a summary of the
evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument;
or (4) a plea for law enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App.
1973). All other arguments are improper. See id.
      Special concern should be shown for final arguments which constitute uninvited and
unsubstantiated accusations of improper conduct by a defendant's attorney. Gomez v. State, 704
S.W.2d 770, 771 (Tex. Crim. App. 1985) (citing Boyde v. State, 513 S.W.2d 588 (Tex. Crim.
App. 1974)). Reversal usually results from improper arguments making direct reference to a
defense attorney, combined with statements that infer defense counsel might manufacture evidence
or offer the testimony of witnesses who give false information. See Orona v. State, 791 S.W.2d
125, 128 (Tex. Crim. App. 1990). In Boyde, the Court said the danger is because the "canons of
ethics are not generally understood by the public from which the members of the jury panel are
drawn. Many do not believe an attorney should undertake the defense of a person charged with
a crime particularly if there is some indication that the defendant is guilty." Boyde, 513 S.W.2d
at 592 (quoting Bray v. State, 478 S.W.2d 89, 90 (Tex. Crim. App. 1972)). "This general
misunderstanding by the public serves to contribute to the prejudicial effect of an argument by a
prosecutor which strikes at a member of the bar for representing a person accused of crime." Id.
       In the first complaint, Tillis says that the prosecutor struck at him over the shoulders of
counsel when he began his closing argument:
Members of the jury, it is a defense attorney's job to be dissatisfied with the State's case. 
Or we can be surprised that [counsel] says he's dissatisfied with the case we brought to you. 
I would have thought that he would at least concede that shooting somebody in the back of
the head that you were intending to kill them. Apparently not. Apparently [counsel] doesn't
believe that when you take a gun, shoot somebody in the mouth, there is an explosion of
blood, a person lying there like they are dead, you walk into the room, then you turn around
and shoot another human being in the back of the head with a firearm that you know is loaded
and will fire, and what you have just done to the person you shot previously, that you are not
trying to kill anybody. That I think is the ludicrousness of the defense position in this case,
the position that they are having to try to take throughout the case.
Although the prosecutor made direct reference to the defense attorney, it was not combined with
statements that inferred defense counsel might have manufactured evidence or knowingly offered
witnesses who gave false information. Thus, we cannot say that under the record presented the
argument was so prejudicial that an instruction to disregard would not have cured any harm. 
Briddle, 742 S.W.2d at 389. We overrule point one.
      Tillis' fourth complaint is about another reference to defense counsel during the closing
argument. The prosecutor said:
Folks, this confabulation business. You know, [counsel] says, well, maybe that she saw
him when she left. There is no evidence of that at all. There is sure no evidence from this
man who says I never saw her at all. And there is sure no evidence from her. The
confabulation comes from [counsel].
Here, the prosecutor's argument was not directed at defense counsel, but at defense counsel's
argument. "Counsel is generally afforded wide latitude in drawing inferences from the record,
as long as such inferences are reasonable and offered in good faith." Cantu v State, 842 S.W.2d
667, 690 (Tex. Crim. App. 1992), cert. denied, ——— U.S. ———, 113 S.Ct. 3046, 125 L.Ed.2d
731 (1993). Additionally, the "confabulation" argument was made in response to an earlier
argument by defense counsel and was proper as an answer to that argument. Alejandro, 493
S.W.2d at 231. Point four is overruled.
      Tillis's second point complains of the prosecutor's saying:
I submit to you -- I don't want to back up on this at all. I submit to you under the
evidence it is the State's position this defendant committed that murder. But we have to prove
to all of you beyond a reasonable doubt. And I can't look in your minds and hearts and say
because this man got up here and cried before you that some of you may not feel sympathy
for him.
We find this argument to be drawn from the evidence and thus not improper. Id. Point two is
overruled.
      The third point asserts that the prosecutor injected his personal opinion of Tillis' testimony
when he said:
I think that it is unfortunate that they have closed nominations for the Academy Awards
because I think when you saw [Tillis'] testimony, that was one of the better acts I've seen
here. But I understand when jurors see a person cry like that, sometimes they wonder is he
telling us the truth.
Tillis also points to a later reference to him as "Mr. Sensitivity."
       The State concedes that this argument could be construed as an expression of personal opinion
about Tillis' demeanor but points out that the jury had the same opportunity to observe Tillis while
he testified. Assuming that it was an improper jury argument, we do not find that under the entire
record it was extreme or manifestly improper or injected new and harmful facts. Willis, 785
S.W.2d at 385. Thus, we cannot conclude that the argument calls for reversal. We overrule point
three.
      In summary we conclude that the arguments Tillis complains of, in light of the record as a
whole, made in the absence of objections, either were not improper or were not so prejudicial as
to reflect a violation of due process or due course of law to the extent that they deprived him of
a fair and impartial trial. Miller v. State, 741 S.W.2d 382, 393 (Tex. Crim. App. 1987), cert.
denied, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988). 
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 25, 1995
Do not publish