COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-020-CR
 
JEREMY JUSTIN ROONEY           
           
           
           
           
APPELLANT
A/K/A JEROMY JUSTIN ROONEY
V.
THE STATE OF TEXAS        
           
           
           
           
           
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
MEMORANDUM OPINION
(1)
------------
Jeremy Justin Rooney a/k/a Jeromy
Justin Rooney appeals his conviction by a jury of the offense of capital murder.
Inasmuch as the State was not seeking the death penalty, the trial court
assessed his punishment at life imprisonment in the Texas Department of Criminal
Justice, Institutional Division. Rooney contends in three points that: (1) the
nonaccomplice evidence was insufficient to connect him to the crime; (2) the
State improperly placed extraneous conduct before the jury and compounded the
error by making the prosecutor a witness; and (3) his trial counsel was
ineffective in not objecting to extraneous conduct evidence. We affirm.
Rooney contends in point one that
the nonaccomplice evidence is insufficient to connect him to the crime. 
Under article 38.14 of the Texas Code of Criminal Procedure, a conviction cannot
stand on accomplice testimony unless it is corroborated by other evidence
tending to connect the defendant with the offense. Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 1979); Colella v. State, 915 S.W.2d 834, 838-39
(Tex. Crim. App. 1995).  The evidence is insufficient if it proves merely
the commission of the offense. Colella, 915 S.W.2d at 838.  It is
not necessary that the corroborating evidence directly connect the defendant to
the crime or that it be sufficient by itself to establish guilt; it need only
tend to connect the defendant to the offense.  Reed v. State, 744
S.W.2d 112, 126 (Tex. Crim. App. 1988).  If the combined weight of the
nonaccomplice evidence tends to connect the defendant to the offense, the
requirement of article 38.14 has been fulfilled.  Gosch v. State,
829 S.W.2d 775, 777 (Tex. Crim. App. 1991), cert. denied, 509 U.S. 922
(1993).  In reviewing this point, we must eliminate the accomplice
testimony from consideration and then examine the remaining portions of the
record to see if there is any evidence that tends to connect Rooney with the
commission of the crime. Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim.
App. 1993).
Larry Richardson testified that on
Christmas Day, 2000, he and Rooney went to the hotel room of Brandon Holcombe
because Rooney wanted to collect money that he believed Holcombe owed him for
the purchase of a shotgun several months before.  He said that after they
arrived, he stunned Holcombe with a Taser gun, then Rooney shot and killed
Holcombe with a .22 rifle. He indicated that he and Rooney took several items
from the hotel room, including a bag, a leather Harley Davidson jacket, a broken
shotgun, a cell phone, and several books of checks belonging to someone other
than Holcombe.
Richardson testified that prior to
the shooting he and Rooney took a .22 rifle from the closet in Rooney's
brother's room. He said the rifle did not have a clip. David Oberzon, Rooney's
stepfather, testified that following the shooting, he discovered that the .22
rifle that was kept in the room of Rooney's brother was missing. He indicated
that the rifle had a clip. Susan Riddle, a neighbor of David Oberzon, testified
that she watched the Oberzon house on Christmas Day, 2000 while the family was
out of town. She indicated that a truck came to the house with two men, neither
of whom was Rooney. She acknowledged telling the prosecutor in an earlier
conversation that she had seen Rooney on Christmas morning and believed he left
the house in the afternoon with another man.
Breann Sharma, a desk clerk at the
Country Inn Suites, testified that on December 25th, she was standing at the
lobby doors, smoking, about 5:00 or 5:30 p.m., when she saw two people run from
the hotel and across the street to a car parked in front of an eighteen-wheeler
truck. Richardson testified that when he and Rooney arrived at the Country Inn
Suites, he parked his car in front of a semi truck, across the street from the
hotel.
Gary Elsholtz testified that
Richardson, while in his presence, described to him how he and Rooney had gone
to see someone because "this guy had screwed Rooney over around on some
guns that he had sold to him or that somebody else had sold to him." He
indicated that Richardson said that after they arrived he hit the victim with a
stun gun, then Rooney came in and shot him. According to Elsholtz, Rooney, who
was present, "acted [the murder] out," showing a "bad ass
face." Elsholtz also related that, while Rooney was having a standoff with
police, he had discouraged Rooney from suicide because "it's all
hearsay" or, in other words that "he [had] just admitted it to a bunch
of dopers." He said he told Rooney he could beat the case because he knew
everyone was doing drugs when Rooney admitted killing Holcombe.
Aris Leann Knowles testified she
was present with Rooney, Richardson, and Amy Hollingsworth when arrangements
were being made for Richardson to get out of town. She indicated that she
overheard Rooney say, while he was in an argument in another room, that
"there was no way they could tie him to the shit."
Rooney seems to suggest that this
testimony, while suspicious, does not tend to connect him with the offense. He
relies on Wincott v. State, 59 S.W.3d 691, 699-701 (Tex. App.--Austin
2001, pet. ref'd). We find that case to be distinguishable. In that case the
court held that various statements by Wincott, while raising a suspicion that
they might indicate his guilt of robbery, were too vague and indefinite to
connect him with the offense charged. Id. at 702. In this case,
evidence that Rooney, when accused of the crime by his accomplice, did not deny
it but acted it out, and evidence that his friend suggested that he should not
commit suicide because the evidence was only hearsay in that he admitted the
offense to a bunch of dopeheads, was evidence specifically connected to
Holcombe's murder that tended to connect Rooney to it.
Rooney asserts that several of the
State's witnesses are unreliable. Such an assertion constitutes an invitation to
impose legal and factual sufficiency standards upon a review of accomplice
witness testimony under article 38.14. See Cathey v. State, 992 S.W.2d
460, 462 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000).
The accomplice-witness rule is a statutorily imposed sufficiency review that is
not derived from federal or state constitutional principles that define the
legal and factual sufficiency standards. Id. at 462-63. Because we
conclude that there is nonaccomplice testimony that tends to connect Rooney with
the commission of this offense, we overrule point one.
Rooney urges in point two that the
State improperly placed extraneous conduct before the jury and compounded the
error by making the prosecutor a witness. He refers to evidence of Rooney's
possible membership in the Aryan Brotherhood, his possibly cooking speed, and
his possible involvement in stealing guns in a burglary. In order to preserve
error in the admission of testimony, it is ordinarily necessary to make a proper
objection; to obtain a ruling by the court on the objection; to ask for an
instruction to disregard in the event the objection is sustained; and to make a
motion for mistrial if the instruction is given. See Nethery v. State,
692 S.W.2d 686, 701 (Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110
(1986). With respect to the testimony of which Rooney complains, there either
was no objection, an objection was made without the court ruling on the
objection, or the objection was sustained but there was no request for an
instruction to disregard the testimony. Consequently, nothing is preserved for
review. See id.
Rooney suggests that error is
preserved as to this evidence even without an objection because the evidence was
calculated to inflame the jury and is of such a nature so as to suggest the
impossibility of withdrawing the impression produced in their minds, citing Boyde
v. State, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974). We find that case to
be distinguishable. In Boyde, the prosecutor continually presented
evidence that was prejudicial and inadmissible and made various comments,
despite prior objections to such evidence and comments having been sustained. Id.
at 590-93. As to some of that evidence and comments, the court held that error
was preserved even in the absence of an instruction to disregard because such an
instruction, if given, would not have cured the error. Id. at 591. This
case does not involve the extreme case of prosecutorial misconduct involved in Boyde.
Furthermore, we have examined the evidence and questions to which Rooney refers
in this case and find none that could not have been cured if an objection had
been sustained and the jury instructed to disregard. We overrule point two.
Rooney insists in point three that
his trial counsel was ineffective for not objecting to the evidence of
extraneous conduct that we discussed in connection with point two. We apply a
two-pronged test to ineffective assistance of counsel claims. Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must
show that his counsel's performance was deficient; second, appellant must show
the deficient performance prejudiced the defense. Strickland, 466 U.S.
at 687, 104 S. Ct. at 2064.
In evaluating the effectiveness of
counsel under the first prong, we look to the totality of the representation in
the particular circumstances of each case. Thompson, 9 S.W.3d at 813.
The issue is whether counsel's assistance was reasonable under all the
circumstances and prevailing professional norms at the time of the alleged
error. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. "[C]ounsel
is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment."
Id. at 690, 104 S. Ct. at 2066. An allegation of ineffective assistance
must be firmly grounded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at 814. Our
scrutiny of counsel's performance must be highly deferential, and every effort
must be made to eliminate the distorting effects of hindsight. Strickland,
466 U.S. at 689, 104 S. Ct. at 2065.
The second prong of Strickland
requires a showing that counsel's errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial whose result is reliable. Id.
at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a
reasonable probability that, but for counsel's unprofessional errors, the result
of the proceeding would have been different. Id. at 694, 104 S. Ct. at
2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our inquiry must
be on the fundamental fairness of the proceeding whose result is being
challenged. Id. at 697, 104 S. Ct. at 2070.
In the majority of instances, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel. Thompson, 9 S.W.3d at 813-14. Where, as
here, the record is silent as to counsel's reason for failing to object, an
appellant fails to rebut the presumption that this was a reasonable decision. Id.
at 814. Consequently, Rooney has failed to show that his counsel's performance
was deficient. We overrule point three.
The judgment is affirmed.
           
           
           
           
           
           
PER CURIAM
 
PANEL F: JOHN G. HILL, J. (Retired,
Sitting by Assignment); CAYCE, C.J.; and WALKER, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: April 10, 2003

1.  See Tex. R. App. P. 47.4.