ROONEY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-020-CR

JEREMY JUSTIN ROONEY APPELLANT

A/K/A JEROMY JUSTIN ROONEY

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Jeremy Justin Rooney a/k/a Jeromy Justin Rooney appeals his conviction by a jury of the offense of capital murder.  Inasmuch as the State was not seeking the death penalty, the trial court assessed his punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division.  Rooney contends in three points that:  (1) the nonaccomplice evidence was insufficient to connect him to the crime; (2) the State improperly placed extraneous conduct before the jury and compounded the error by making the prosecutor a witness; and (3) his trial counsel was ineffective in not objecting to extraneous conduct evidence.  We affirm.

Rooney contends in point one that the nonaccomplice evidence is insufficient to connect him to the crime.  Under article 38.14 of the Texas Code of Criminal Procedure, a conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense.  
Tex. Code Crim. Proc. Ann.
 art. 38.14 (Vernon 1979); 
Colella v. State
, 915 S.W.2d 834, 838-39 (Tex. Crim. App. 1995).  The evidence is insufficient if it proves merely the commission of the offense.  
Colella
, 915 S.W.2d at 838.  It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense.
  Reed v. State
, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).  If the combined weight of the nonaccomplice evidence tends to connect the defendant to the offense, the requirement of article 38.14 has been fulfilled.  
Gosch v. State
, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991), 
cert. denied
, 509 U.S. 922 (1993).  In reviewing this point, we must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect Rooney with the commission of the crime.
  Cook v. State
, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).  

Larry Richardson testified that on Christmas Day, 2000, he and Rooney went to the hotel room of Brandon Holcombe because Rooney wanted to collect money that he believed Holcombe owed him for the purchase of a shotgun several months before.  He said that after they arrived, he stunned Holcombe with a Taser gun, then Rooney shot and killed Holcombe with a .22 rifle.  He indicated that he and Rooney took several items from the hotel room, including a bag, a leather Harley Davidson jacket, a broken shotgun, a cell phone, and several books of checks belonging to someone other than Holcombe.  

Richardson testified that prior to the shooting he and Rooney took a .22 rifle from the closet in Rooney’s brother’s room.  He said the rifle did not have a clip.  David Oberzon, Rooney’s stepfather, testified that following the shooting, he discovered that the .22 rifle that was kept in the room of Rooney’s brother was missing.  He indicated that the rifle had a clip.  Susan Riddle, a neighbor of David Oberzon, testified that she watched the Oberzon house on Christmas Day, 2000 while the family was out of town.  She indicated that a truck came to the house with two men, neither of whom was Rooney.  She acknowledged telling the prosecutor in an earlier conversation that she had seen Rooney on Christmas morning and believed he left the house in the afternoon with another man. 

Breann Sharma, a desk clerk at the Country Inn Suites, testified that on December 25th, she was standing at the lobby doors, smoking, about 5:00 or 5:30 p.m., when she saw two people run from the hotel and across the street to a car parked in front of an eighteen-wheeler truck.  Richardson testified that when he and Rooney arrived at the Country Inn Suites, he parked his car in front of a semi truck, across the street from the hotel. 

Gary Elsholtz testified that Richardson, while in his presence, described to him how he and Rooney had gone to see someone because "this guy had screwed Rooney over around on some guns that he had sold to him or that somebody else had sold to him."  He indicated that Richardson said that after they arrived he hit the victim with a stun gun, then Rooney came in and shot him.  According to Elsholtz, Rooney, who was present, “acted [the murder] out,” showing a "bad ass face."  Elsholtz also related that, while Rooney was having a standoff with police, he had discouraged Rooney from suicide because "it's all hearsay" or, in other words that "he [had] just admitted it to a bunch of dopers."  He said he told Rooney he could beat the case because he knew everyone was doing drugs when Rooney admitted killing Holcombe.  

Aris Leann Knowles testified she was present with Rooney, Richardson, and Amy Hollingsworth when arrangements were being made for Richardson to get out of town.  She indicated that she overheard Rooney say, while he was in an argument in another room, that "there was no way they could tie him to the shit."  

Rooney seems to suggest that this testimony, while suspicious, does not tend to connect him with the offense.  He relies on 
Wincott v. State
, 59 S.W.3d 691, 699-701 (Tex. App.—Austin 2001, pet. ref’d).  We find that case to be distinguishable.  In that case the court held that various statements by Wincott, while raising a suspicion that they might indicate his guilt of robbery, were too vague and indefinite to connect him with the offense charged.  
Id. 
at 702.  In this case, evidence that Rooney, when accused of the crime by his accomplice, did not deny it but acted it out, and evidence that his friend suggested that he should not commit suicide because the evidence was only hearsay in that he admitted the offense to a bunch of dopeheads, was evidence specifically connected to Holcombe’s murder that tended to connect Rooney to it.   

Rooney asserts that several of the State’s witnesses are unreliable.  Such an assertion constitutes an invitation to impose legal and factual sufficiency standards upon a review of accomplice witness testimony under article 38.14.  
See Cathey v. State
, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), 
cert. denied
, 528 U.S. 1082 (2000).  The accomplice-witness rule is a statutorily imposed sufficiency review that is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards.  
Id
. at 462-63.  Because we conclude that there is nonaccomplice testimony that tends to connect Rooney with the commission of this offense, we overrule point one.

Rooney urges in point two that the State improperly placed extraneous conduct before the jury and compounded the error by making the prosecutor a witness.  He refers to evidence of Rooney’s possible membership in the Aryan Brotherhood, his possibly cooking speed, and his possible involvement in stealing guns in a burglary.  In order to preserve error in the admission of testimony, it is ordinarily necessary to make a proper objection; to obtain a ruling by the court on the objection; to ask for an instruction to disregard in the event the objection is sustained; and to make a motion for mistrial if the instruction is given. 
 See Nethery v. State
, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985), 
cert. denied
, 474 U.S. 1110 (1986).  With respect to the testimony of which Rooney complains, there either was no objection, an objection was made without the court ruling on the objection, or the objection was sustained but there was no request for an instruction to disregard the testimony.  Consequently, nothing is preserved for review.  
See id.

Rooney suggests that error is preserved as to this evidence even without an objection because the evidence was calculated to inflame the jury and is of such a nature so as to suggest the impossibility of withdrawing the impression produced in their minds, citing 
Boyde v. State
, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974).  We find that case to be distinguishable.  In 
Boyde
, the prosecutor continually presented evidence that was prejudicial and inadmissible and made various comments, despite prior objections to such evidence and comments having been sustained.  
Id.
 at 590-93.  As to some of that evidence and comments, the court held that error was preserved even in the absence of an instruction to disregard because such an instruction, if given, would not have cured the error.  
Id.
 at 591.  This case does not involve the extreme case of prosecutorial misconduct involved in 
Boyde.  
Furthermore, we have examined the evidence and questions to which Rooney refers in this case and find none that could not have been cured if an objection had been sustained and the jury instructed to disregard.  We overrule point two.

Rooney insists in point three that his trial counsel was ineffective for not objecting to the evidence of extraneous conduct that we discussed in connection with point two.  We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that his counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation in the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly grounded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. 
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070. 

In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. 
Thompson
, 9 S.W.3d at 813-14.  Where, as here, the record is silent as to counsel's reason for failing to object, an appellant fails to rebut the presumption that this was a reasonable decision.  
Id.
 at 814.  Consequently, Rooney has failed to show that his counsel's performance was deficient.  We overrule point three.

The judgment is affirmed.

PER CURIAM

PANEL F: JOHN G. HILL, J. (Retired, Sitting by Assignment); CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: April 10, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.