Opinion issued December 31,
2009

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00513-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DAVE WARD, III, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the County Court at Law No. 1

Fort Bend County, Texas

Trial Court Cause No. 126653

 

 



MEMORANDUM  OPINION

A jury convicted appellant, Dave Ward, III, of
assault causing bodily injury.  See Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2009).  The jury
found that Ward was in a dating relationship with the complainant.  Before the punishment phase of trial, the
State and Ward reached an agreement that Ward’s punishment would be 90 days’
confinement in the Fort Bend County Jail, and the trial court rendered
judgment.  On Ward’s motion, the trial
court suspended the imposition of sentence pending this appeal.  On appeal, Ward challenges the admission of
certain testimony by a sheriff’s deputy and the factual sufficiency of the
evidence to support the jury’s rejection of his self-defense claim.

          We affirm.

Background

          The facts leading up to the assault
charge against Ward were disputed at trial. 
The evidence presented at trial and relevant to this appeal is
summarized below.

Complainant’s Version of Events

On
the evening of September 5, 2005, complainant A. Woods argued with appellant
Dave Ward about his relationship with another woman.[1]  The dispute took place at Woods’s house in
Fort Bend County.  Exhausted from her
day, Woods went to sleep.  In the early
morning the next day, Woods was awakened by Ward punching her shoulder and
shouting at her—calling her insulting, vulgar names, threatening her, and
berating her for contacting the other woman. 
Woods told Ward to stop, but Ward continued punching Woods’s shoulder
and back.  At trial, Woods testified that
Ward punched her more than six times. 
While Ward punched her, Woods fell on the floor.  Woods tried to get up, but Ward pushed and
kicked her.  

          Woods went to the kitchen to get the
telephone, but Ward got to it first and removed the batteries.  Ward then ran to the bedroom to retrieve another
telephone.  Woods grabbed her mobile
telephone from the kitchen, and ran to the bathroom to call the police.  Ward punched through the bathroom door, which
hit Woods’s face and caused her to drop the mobile telephone.  Ward took Woods’s mobile telephone and left
the house. 

          Woods testified that “I let my anger
outweigh my fear, and I wanted to lure him back to my house . . . [s]o that the
police could apprehend him.  I wanted to
make sure that the police got him.” 
Woods called Ward twice, asking him to return her mobile telephone.  Less than an hour after the assault, Ward
returned to Woods’s house.  Woods
testified that Ward seemed apologetic: “Tears were coming from his eyes, and he
said he was sorry.”  Ward slept on
Woods’s couch and took a shower when he awoke several hours later.  While Ward was in the shower, Woods called the
police.  

Appellant’s Version of Events

          Ward offered a different account of
the incident, testifying that Woods was the aggressor.  Ward repeatedly testified that he was no
longer in a dating relationship with Woods and that they were only
friends.  Nevertheless, he testified that
he had a key to her house, kept several large and small possessions there
(including furniture and appliances), spent every other evening with Woods,
slept together in one bed with her, and spent the two nights prior to the
alleged assault at Woods’s house.

Ward
testified that Woods was intoxicated and that she instigated a fight because of
her jealousy about Ward’s new girlfriend. 
He testified that Woods assaulted him physically, punching his chest and
face and causing him pain.  Ward claimed
that Woods’s assault bruised him but that the bruises did not show because of
his dark complexion.  He said that he
raised his hands defensively and held both of her arms to restrain her from
hurting him or herself.  Ward denied
hitting, kicking, or punching Woods.  

Ward
testified that Woods stumbled and fell, hitting her chin on the dining room
table.  On cross-examination, however,
Ward testified that “[Woods] doesn’t stumble. 
She drinks a lot, but she doesn’t stumble.”  Ward said that he left Woods’s house and
rented a nearby hotel room, but he returned at Woods’s insistence.  Ward testified that they slept together in Woods’s
bed.  According to Ward, when he awoke
the next day, he took a shower and prepared to leave Woods’s house.  Fort Bend County Sheriff’s Deputy C. Carillo arrived,
spoke to Ward and Woods, and instructed Ward to leave.

Other Trial Proceedings

          At trial, Deputy Carillo testified
that Woods was upset when he arrived at her house in response to her call for
help.  Deputy Carillo saw fresh bruises
on Woods, which he photographed, along with the damaged bathroom door.  Deputy Carillo spoke with both Woods and
Ward.  He testified that he saw no
visible injuries on Ward.  Although Ward
was already planning to leave, Deputy Carillo told him to leave Woods’s house.  On redirect examination, Deputy Carillo
testified that he determined that Ward was the aggressor.

          The trial court included a
self-defense instruction in the jury charge, and the jury found Ward
guilty.  In addition, the jury found that
Ward and Woods had a dating relationship. 
Although Ward had previously elected to have the jury assess his
punishment, he reached an agreement as to punishment with the State, upon which
the trial court entered judgment.  On
Ward’s motion, the trial court suspended imposition of his punishment pending
this appeal.

Admission of Officer’s
Opinion Testimony

          In his first issue, Ward contends that
the trial court reversibly erred in admitting Deputy Carillo’s testimony that,
in his opinion, Ward was the aggressor. 
According to Ward, this was tantamount to allowing Deputy Carillo to testify
that Ward was guilty.  

          At trial, the State asked Deputy
Carillo preliminary questions about his experience and training.  Then the State asked about the incident
between Ward and Woods:

Q.      And after
making your assessment of the scene, speaking to the witnesses, based on your
training and experience, did you make a determination who the aggressor was in
this situation?

          

DEFENSE ATTORNEY:        Objection,
Judge, irrelevant.  Calls for
speculation.

 

THE STATE:       It
doesn’t call for speculation.  He’s been
trained on how to do that.  He’s just
testified that he went to the scene.  He
looked at the scene.  He talked to
witnesses and he had to make a determination and that’s what I’m asking him to
tell the jury what that determination is.

 

THE COURT:      Determination from the information?

 

THE STATE:       Correct.

 

THE COURT:      I’m going to allow the question.

 

THE STATE:       Thank you, Your Honor.

 

Q.      I’ll
repeat the question.  Did you make a
determination on that day who the aggressor was?

 

A.      Yes, ma’am.

 

Q.      And who was that?

 

A.      Mr. Ward.

 

On
appeal, Ward relies on Boyde v. State,
513 S.W.2d 588, 590 (Tex. Crim. App. 1974), and Weathersby v. State, 627 S.W.2d 729, 730 (Tex. Crim. App. 1982),
for the proposition that it is improper for a police officer to opine as to the
defendant’s guilt or innocence.  In Boyde, the Court of Criminal Appeals
held that “numerous instances when the prosecutor attempted to circumvent the
rulings of the court in both presentation of evidence and argument to the jury”
required reversal.  513 S.W.2d at
593.  The prosecutorial misconduct in Boyde included asking a police officer
if he believed the defendant was guilty. 
Id. at 590.  In Weathersby,
the Court of Criminal Appeals held that the defendant received ineffective
assistance of counsel because his trial attorney failed to object on numerous
occasions, including failures to object to questions about the defendant’s
friends’ criminal character, the detectives’ opinion testimony regarding the
defendant’s guilt, jury argument about the detectives’ testimony, evidence that
the defendant’s co-conspirator had been found guilty of the crime, and
questions about the defendant’s extraneous offenses.  627 S.W.2d at 730–31.

When
Deputy Carillo was asked at trial about his determination of who, as between
Ward and Woods, was the aggressor in the incident, Ward objected based only on
relevance and speculation.  Ward made no
objection on the basis that Officer Carillo was being asked to provide an
opinion as to Ward’s guilt or innocence. 
To the extent Boyde and Weathersby might have supported an
argument that eliciting such an opinion was improper, we hold that Ward’s
appellate issue is not preserved because his trial objection fails to comport
with his argument on appeal.  See Barnes v. State, 876 S.W.2d 316, 325
(Tex. Crim. App. 1994) (holding that appellate issue waived because it did not
comport with trial objection).

          We overrule Ward’s first issue.

Factual Sufficiency

In
his second issue, Ward contends that the evidence was factually insufficient to
support the jury’s rejection of his self-defense claim.[2]  In a factual sufficiency review, we view all
of the evidence in a neutral light. Ladd
v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside only if
(1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); see Zuliani v. State, 97 S.W.3d
589, 595 (Tex. Crim. App. 2003) (applying factual sufficiency standard of
review to case when appellant challenged factual sufficiency of jury’s
rejection of his self-defense claim).

Under
the first prong of Johnson, we cannot
conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury.  Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006).  Under the second
prong of Johnson, we cannot declare
that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict.  Id.
Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In
reviewing the factual sufficiency of the evidence, appellate courts should
afford almost complete deference to a jury’s decision when that decision is
based upon an evaluation of credibility.  Lancon
v. State, 253 S.W.3d 699, 704–05, 707 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court which relies on the cold record.  Id.
at 705.  The jury may choose to believe
some testimony and disbelieve other testimony.  Id.
at 707.

As
alleged in the information, the State charged Ward with assault by
intentionally, knowingly, or recklessly causing bodily injury to Woods by
striking her with his hand and by kicking her with his foot.  See
Tex. Penal Code Ann. § 22.01(a).  Woods testified that Ward caused her bodily
injury by punching, hitting, and kicking her. 
She testified that she was in pain and sought medical attention.  She testified about the nature and extent of
her injuries.  Deputy Carillo testified
that he saw Woods hours after the assault and that he saw bruises and a cut on
her skin.  In addition, the State
introduced photographs showing Woods’s injuries and the damage to the bathroom
door.  The State also introduced records
from Woods’s hospital visit.  Because the
jury was entitled to believe Woods, we cannot conclude that the evidence that
Ward assaulted Woods is so weak that the verdict is clearly wrong and
manifestly unjust.  See Johnson, 23 S.W.3d at
11.  

Ward
argues that the jury should not have rejected his claim of self-defense because
Woods’s “testimony and actions were so out of character for a supposed assault
victim as to not be credible to an extreme degree.”  Ward notes that Woods testified that she
could not recall certain facts about the couple’s activities during the days
just prior to the assault.  In
particular, Ward contends that Woods’s credibility was undermined by the
evidence that she called him after the assault, invited him back to the house,
and allowed him to sleep there for a while before calling the police.  As Ward observes, Woods’s actions after the
assault were one of many considerations the jury could have used to evaluate
Woods’s credibility. Similarly, Ward’s self-defense claim rested entirely upon
his testimony and depended for its success on the jury’s determination that
Ward was telling the truth.  While the
photographs and Deputy Carillo’s testimony corroborated Woods’s testimony,
there was nothing to corroborate Ward’s testimony.  As we have noted, we afford almost complete
deference to a jury verdict based upon an evaluation of credibility because the
jury was in the best position to judge the witnesses’ credibility.  Lancon,
253 S.W.3d at 704–05.  Thus, we conclude
that the verdict was not against the great weight and preponderance of the
evidence. 

We
hold that the evidence was factually sufficient, and we overrule Ward’s second
issue.

 

 

 

 

 

 

 

Conclusion

 

          We affirm the judgment of the trial
court.

 

 

 

 

                                                          Michael
Massengale

                                                          Justice

 

Panel consists of
Chief Justice Radack and Justices Bland and Massengale.

Do not publish.  Tex.
R. App. P. 47.2(b).

 

 











[1]        The
nature of the relationship between Woods and Ward was disputed at trial.  The issue was presented to the jury, which
found that the two were in a dating relationship.  See
Tex. Fam. Code Ann. § 71.0021(b)
(Vernon 2009) (“‘[D]ating relationship’ means a relationship between
individuals who have or have had a continuing relationship of a romantic or intimate
nature.  The existence of such a
relationship shall be determined based on consideration of: (1) the length of
the relationship; (2) the nature of the relationship; and (3) the frequency and
type of interaction between the persons involved in the relationship.”).  None of Ward’s issues on appeal implicate
this fact dispute.





[2]        During
the pendency of this appeal, Ward has filed numerous items outside the
appellate record with the Clerk of this Court. 
These items include letters, photographs, greeting cards, business
cards, clothing, documents, toys, and a screenplay.  Because these items are all outside the appellate
record, we have not considered them in our sufficiency review.