COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-099-CR

JAMES EDWIN BULLARD APPELLANT

A/K/A JAMES E. BULLARD

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction 

In five points, Appellant James Edwin Bullard a/k/a James E. Bullard appeals his conviction of murder.  We affirm.

II.  Factual and Procedural History

In the fall of 1990, Fort Worth’s south and east sides played host to the lucrative drug business, out of which spawned turf wars and gang violence.
(footnote: 2)  Friction between rival south and east side gangs escalated after the death of Dreyon Jones on November 3, 1990.  Jones belonged to L.A. Ron’s crew.  L.A. Ron, whose real name was Ron Fisher, was a California transplant hoping to get a cut of the booming drug business in Fort Worth.  In response to Jones’s killing, Morgan “Youngster” Carter, a member of a competing faction from the south side, was fatally shot the next day.
(footnote: 3)  Word quickly spread that Marvin Brown, an east side gang member, was responsible for killing Carter.  Brown was subsequently shot and fatally wounded while stopped at the intersection of Riverside and Berry in Fort Worth, Texas.
(footnote: 4)
 

A.  The Killing of Larry “Polk” Embry

Ten days later, seventeen-year-old Larry “Polk” Embry was gunned down, and his body was found in Cobb Park, the same area as the Brown killing and near Bullard’s neighborhood.  Like Brown, Embry was a member of an east side gang.  Investigators never believed that robbery was a motive in the killing because there was cash in Embry’s hand and his car keys were on the ground near his body.

Fort Worth police detective G.R. Gray testified that on November 16, 1990, he was dispatched to the 2800 block of Cobb Park West in south Fort Worth as a crime scene officer.  He saw the body of Embry lying face up on the ground near a blue Pontiac Trans Am.  He further testified that based on how the blood stains appeared, Embry had been standing when he was shot.  Though no casings were found at the scene, Detective Gray believed that Embry had been killed with a shotgun.

B.  The Connection to Marvin Brown

The State offered evidence of the death of Brown to show that Bullard had motive for the Embry killing—Embry was a potential witness to the Brown killing. 

Detective Gray testified that he worked both the Embry and Brown crime scenes.  Shell casings were recovered from the Brown crime scene at the intersection of Riverside and Berry, and they appeared to have all come from a 12-gauge shotgun.  Tarrant County firearm examiner Ronald Singer testified that no shell casings were recovered from Cobb Park, but the projectiles recovered from the body of Embry were probably from a 12-gauge shotgun.  Tarrant County Chief Medical Examiner Nizam Peerwani testified that both Embry and Brown were killed with a 12-gauge shotgun.

C.  Admissions of Guilt

The State further offered evidence that Bullard had admitted to multiple people that he had killed Brown and Embry.  

Mark Carter, Morgan Carter’s older brother, testified that in 1997 Bullard told him that he “smoked” the guy who had killed Morgan, as if it were a favor to Mark and his family.
(footnote: 5)  He further testified that Bullard admitted shooting Embry in Cobb Park, saying that Fred Branch had set up the whole thing and when Embry showed up, he shot him in the face.

Additionally, Chris Craven, whom Bullard met while in the Tarrant County Jail, testified that Bullard had disclosed to him that he had been extradited from California to stand trial in a “cold case.”  Craven stated that Bullard asked him if an ex-girlfriend could testify that he had admitted to her having killed someone.  Bullard later told Craven that he had shot Brown because Brown was “playing both sides of the fence” by talking both to the “guys from L.A. and to the guys [from Fort Worth].”  Bullard also admitted to shooting Embry in the park, though he didn’t say which park, with a shotgun.  Bullard told Craven that Embry was shot because he knew about the Brown killing.

D.  Procedural History

Fifteen years after the crime, Bullard was indicted for Embry’s murder, to which he pleaded not guilty.  After both the State and Bullard had presented their respective cases, the jury found Bullard guilty of murder.  Prior to trial, Bullard elected to have the trial court assess punishment in the event of a guilty verdict.  The trial court assessed Bullard’s punishment at confinement for life. This appeal followed.

III.  Limiting Instruction

In his first point, Bullard claims that the trial court erred by denying his request for a limiting instruction that would have limited the State’s use of the alleged extraneous offense.  In sum, Bullard argues that the trial court abused its discretion by requiring Bullard’s counsel to craft a limiting instruction on the spot and by denying him any limiting instruction contemporaneous with the admission of the extraneous offense.

The State first cites us to 
Payton v. State
, which states that no limiting instruction is required when an extraneous offense is offered to directly prove one of the main issues in an indicted case such as motive, intent, or malice.  830 S.W.2d 722, 730 (Tex. App.—Houston [14th
 Dist.] 1992, no pet.).  However, this court has held that “Rule 105 of the Texas Rules of Evidence requires a limiting instruction, upon proper request, when evidence is admitted for one purpose but is not admissible for another purpose.”  
King v. State
, 189 S.W.3d 347, 356 (Tex. App.—Fort Worth 2006, no pet.) (citing 
Tex. R. Evid.
 105(a) and 
Rankin v. State
, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996)).  Here it is obvious that the evidence was admitted for the purpose of proving Bullard’s motive.  However, without a limiting instruction, it is possible that the jury considered this extraneous act as direct evidence of Bullard’s guilt, that is, propensity evidence, rather than for the purpose for which it was offered.  
See Davis v. State
, 169 S.W.3d 673, 677 n.2 (Tex. App.—Fort Worth 2005, no pet.).  Moreover, the Court of Criminal Appeals has held that: 

[l]imiting instructions given for the first time during the jury charge thus do not constitute an efficacious application of Rule 105(a) since it allows for the possibility that evidence will be used improperly in clear contravention to the purpose of the rule.  Since limiting instructions operate most effectively when given simultaneously with the relevant evidence, it would not do to grant trial courts “discretion” to deliver those instructions, after they had been properly requested, at a less opportune time. 

Rankin
, 974 S.W.2d at 713.  Therefore, we hold that Bullard was entitled to receive a limiting instruction when the extraneous evidence was admitted.  

Nevertheless, Bullard was still required to 
properly request 
such an instruction.  
See King
, 189 S.W.3d at 356. 
 He did not do so.  Instead, Bullard requested a limiting instruction stating that the extraneous offense evidence would only be “relevant if it was connected up later.”  This can in no way be read to be a request that the extraneous offense evidence be considered only for the purpose of motive.  Therefore, we hold that Bullard’s complaint to the trial court does not comport with his complaint on appeal.  
See Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that complaint at trial must comport with complaint made on appeal)
; 
see also
 
Adams v. State
, 862 S.W.2d 139, 148 (Tex. App.—San Antonio 1993, pet. ref’d) (stating that complaint regarding limiting instruction at trial must comport with complaint on appeal).
  Accordingly, we overrule Bullard’s first point.      

IV.  Ineffective Assistance of Counsel

In his second point, Bullard argues that he was denied effective assistance of counsel because his trial counsel failed to properly request a limiting instruction when the trial court ruled that extraneous offense evidence was admissible. 

A. Standard of Review 

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his 
counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62
-
63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688
—
89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813
-
14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Id.
 (quoting 
Thompson
, 9 S.W.3d at 813).

B. Application

Bullard complains that his trial counsel
 
provided ineffective assistance when he did not formulate the proper wording for the requested limiting instruction regarding the extraneous offense.  Bullard concedes that oftentimes the record on direct appeal is not developed enough to support an ineffective assistance claim, but he claims that this is one of the few cases in which no such further development is needed.  The State responds that the record does not reflect that trial counsel lacked a professional reason for not mentioning motive when requesting the limiting instruction.  We agree.  

It is entirely plausible that defense counsel may have wished to avoid requesting the instruction in such way that would have highlighted  motive and the extraneous offense to the jury.  Nothing in the record indicates what defense counsel’s trial strategy was.  Therefore, we cannot say that the alleged ineffectiveness is 
firmly founded in the record, or that the record affirmatively demonstrates the alleged ineffectiveness.  
See Salinas
, 163 S.W.3d at 740
.  As a result, we overrule Bullard’s second point.

V.  Jury Argument

In his third and fifth points, Bullard contends that the trial court erred by overruling his objections to jury arguments made by the State during closing arguments.  Specifically, Bullard argues that the trial court erred by overruling his objections to the State’s arguments that it had more information about Bullard that it could have brought to the jury and that the prosecutor has taken an oath “to see that justice is done,” which is an oath separate from that of trial counsel.  Additionally, in his fourth point, Bullard claims that he was denied effective assistance of counsel when his trial counsel failed to properly object to the State’s argument that it had more information about Bullard that it could have brought to the jury
.    

A. Standard of Review - Jury Argument 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94
-
95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  

If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection is not reversible error unless it affected the appellant’s substantial rights.  
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692
-
93 (Tex. Crim. App. 2000); 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  In determining whether the appellant’s substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor’s remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct.  
Martinez
, 17 S.W.3d at 692
-
93; 
Mosley
, 983 S.W.2d at 259.

The invited argument rule permits prosecutorial argument outside the record in response to defense argument that goes outside the record.  
Wilson v. State
, 938 S.W.2d 57, 60-61 (Tex. Crim. App. 1996), 
abrogated on other grounds by Motilla v. State
, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).  A prosecutor may not stray beyond the scope of the invitation, however.  
Id.
 at 61.  The idea of invited response is not used to excuse improper comments but to determine the effect of the comments on the trial as a whole. 
 Darden v. Wainwright
, 477 U.S. 168, 182, 106 S. Ct. 2464, 2472 (1986).

B. “More Information” Argument 

The portion of the State’s argument that Bullard felt was objectionable was as follows:

[State:] I want you to look at my notebook, and for that matter look at that box down there as well.  You better believe there is a lot more about this Defendant, but I brought you everything the law will allow me to bring you.

[Defense Counsel:] I’m going to object to that.  That’s outside the record and outside the evidence.  She brought what she chose to bring.   

[Trial Court:] Overruled.

[State:]
 
I brought you everything the law allows me to bring.  Now, counsel for the defense would have you believe he can’t bring you witnesses.  Is that true?  Has he not brought a single witness?  No, of course not.  He brought you five or six witnesses today.  Don’t you think if any of these police officers or detectives were going to substantiate one thing that [defense counsel] implied to you all, accused the witnesses of, he would have them up here?  They are just across the street.

The State responds that this argument was a response to defense counsel’s argument that was as follows:

Do you think there is an investigating detective assigned to that case?  Sure there was.  It is reasonable.  Where is he?  What did he investigate?  What did he come up with?  What did he not come up with?  The State didn’t bring it to you.  This happened in 1990.  Do you think there were investigating detectives all along?  Sure.  Where are they?  How come they weren’t brought into the courtroom?  

And it is not our burden to do it.  It is the State’s burden.  And I am going to tell you why they weren’t brought, I believe.  

It is a reasonable deduction that they aren’t brought.  
Look at that
.  Do you think you only have two statements from two snitches in 
all that material
?  The State doesn’t want them challenged on cross. 

The State doesn’t want to open up the case.  It is that simple. [Emphasis added.]

Furthermore, the State contends that the theme running throughout defense counsel’s jury argument was that there was a wealth of evidence and witnesses the State did not bring because it did not want to open up the case or subject witnesses to cross-examination.  

The State asserts that a prosecutor is entitled to respond to an argument by defense counsel that suggests impropriety on the part of the State, and that in doing so, the prosecutor may respond to a defense attorney’s 
outside the record
 attacks by straying outside the record as well. 

We disagree with the State’s position that defense counsel went outside the record when he referenced witnesses that were being withheld by the State.  In general, counsel is permitted to comment on the opposing party’s failure to call certain witnesses.  
See O’Bryan v. State
, 591 S.W.2d 464, 479 (Tex. Crim. App. 1979) (holding that a prosecutor, in argument, may comment upon the defendant’s failure to call certain witnesses)
.  Had the State referenced
 only the defense’s failure to call certain witnesses in its response, the comment at issue would have been permissible. 
 See id
.  However, 
the prosecutor ventured beyond permissible jury argument and went outside the record when she informed the jurors that “there was a lot more about this

Defendant, but I brought you everything the law will allow me to bring you.”  

While we agree with the State that a portion of defense counsel’s remarks
(footnote: 6) invited a response from the prosecution, we will not condone an improper response.  Because the prosecution’s response referenced inadmissible evidence, the comment was improper.  
See Felder
, 848 S.W.2d at 94
-
95.  
Therefore, the trial court erred in overruling the defendant’s objection.

Having found error, we must determine whether the error had a substantial and injurious effect or influence on the jury’s verdict.  
Martinez
, 17 S.W.3d at 692
-
93
; 
Mosley
, 983 S.W.2d at 259.
 
 
In determining whether a jury argument is extreme or harmful, we look at the entire record to determine if there was a willful and calculated effort on the part of the State to deprive Bullard of a fair and impartial trial.  
See Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000);
 Cantu v. State
, 939 S.W.2d 627, 633 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 994 (1997); 
Johnson v. State
, 604 S.W.2d 128, 135 (Tex. Crim. App. 1980) (panel op.).

To determine whether the State’s comment was harmful, we must first evaluate the severity of the State’s remarks.  
See Mosley
, 983 S.W.2d at 259.  
In the instant case, there was no willful or calculated effort on the part of the State to deprive Bullard of a fair and impartial trial.  While the prosecutor’s comment was improper, it was also impromptu and made only in response to remarks by Bullard’s counsel.  Because the State’s comment was neither willful nor calculated, we hold that the severity of the comment was minimal.
 
 
See
 
Wesbrook, 
29 S.W.3d at 115; 
Martinez
, 17 S.W.3d at 692
-
93
. 
 

In making this determination, we have taken into consideration the authority to which Bullard directs our attention.  Bullard relies on 
Berryhill v. State
, 501 S.W.2d 86, 87 (Tex. Crim. App. 1973), to support his conclusion that the State’s comment was severe.  In that case, the prosecutor used hypothetical questions when he cross-examined the appellant.  
Id.
 
 The prosecutor then implied to the jury that evidence existed that would support the matters set forth in his hypothetical questions, but he stated that he could not bring that evidence to them.  
Id.
  The prosecutor then invited the jury to speculate on what those matters were.  
Id.
  The Texas Court of Criminal Appeals stated that “[an a]rgument injecting matters not in the record is clearly improper; but argument inviting speculation is even more dangerous  because it leaves to the imagination of each juror whatever extraneous ‘facts’ may be needed to support a conviction.” 
 Id.
  The court held that the prosecutor’s argument implied the existence of incriminating evidence that could not be introduced before the jury, so it reversed the appellant’s conviction.  
Id.

Bullard also directs the court to 
Boyde v. State
, 513 S.W.2d 588, 591 (Tex. Crim. App. 1974).  There, the prosecutor referenced specific facts and witnesses that the grand jury had been permitted to hear but were inadmissible as to the sitting jury. 
 Id.
  The prosecutor specifically referred to two witnesses who gave testimony before the grand jury.  
Id.
  The Texas Court of Criminal Appeals reversed the conviction, reasoning that the defendant was harmed when the prosecutor conveyed to the jury that there was evidence of guilt other than that which was before the jury.  

We do not condone the prosecutor’s words, but neither do we find that they were as prejudicial as the comments in 
Berryhill 
and 
Boyde.  See Berryhill
, 501 S.W.2d at 87;
 Boyde
, 513 S.W.2d at 591
.  The case before us is distinguishable from both cases Bullard cites to support his argument. 
 First, 
the prosecutor in this case did not purposefully set forth inadmissible evidence before the jury like the prosecutor in 
Berryhill 
did
.  T
he State’s comment was not a willful and calculated effort on the part of the State to invite speculation regarding inadmissible evidence of Bullard’s guilt.  “You better believe there is a lot more about this defendant” would seem to invite speculation in general, but not “focused” speculation like the cases Bullard cites.  The prosecutor simply made a single improper comment in response to opposing counsels remarks.  
See Wesbrook,
 29 S.W.3d at 115. 
 
Furthermore, the prosecutor’s comment did not inject new information into the case like the prosecutor in 
Boyde
 did.
  
Here, the prosecutor did not specifically refer to facts, witnesses, or testimony that the jury was not permitted to hear.
  See McKay v. State
, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985) (holding that to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence).
  
Furthermore, the prosecutor commented on the inadmissible evidence only a single time, further demonstrating that her remarks were not the result of a willful and calculated effort to invite speculation on Bullard’s guilt and that any potential for prejudice was minimized.  
After careful evaluation, we find that the severity of the misconduct is relatively small
.  The first factor does not weigh heavily in Bullard’s favor. 
 
See Mosley,
 983 S.W.2d at 260.

Turning to the second factor, we find that no curative action was taken as the trial court overruled Bullard’s objection. 

In evaluating the third factor, which examines the certainty of a conviction without the misconduct,
 we find that it weighs heavily in favor of the State.  
There was an abundance of evidence upon which the jury could have based its guilty verdict, and thus we conclude that the outcome would not have changed had the improper remark not been made.  The record reflects that Bullard admitted to several individuals that he had committed the murder of Larry Embry.  Bullard admitted to Mark Carter that he had shot Embry in Cobb Park, saying that another guy had set the whole thing up and when Embry showed up, he shot him in the face.  
Bullard also told fellow inmate, Chris Craven, that he shot Larry Embry with a shotgun in a Fort Worth park.  Other evidence corroborating Bullard’s admissions include the testimony of Tarrant County firearm examiner Ronald Singer and Tarrant County Chief Medical Examiner Nizam Peerwani.  Singer testified 
that the projectiles recovered from the body of Embry were probably from a 12-gauge shotgun, while Peerwani testified that Embry was killed with a 12-gauge shotgun.  In light of this testimony and the strength of the State’s case, we do not believe that Bullard’s substantial rights were affected by the prosecutor’s reference to inadmissible evidence.   

Also significant was the fact that once the prosecutor made the improper comment, she did not dwell on the inadmissible evidence.  She quickly moved on to refer to the absence of certain defense witnesses.  The prosecutor did not revisit the comment she made concerning the inadmissible evidence at any point during the remainder of the trial.  We agree with the State that the impact of the prosecutor’s comment was minimal when compared with the impact of the rest of the evidence.  After consideration of these facts, we determine that there is a high degree of certainty that Bullard would have been convicted without the State’s improper comment.

After evaluating the three factors, we conclude that the trial court’s error in overruling Bullards’s objection 
did not have a substantial or injurious effect on the jury’s verdict and did not affect Bullard’s substantial rights.  
See King
, 953 S.W.2d at 271.  Because a conviction should not be reversed for nonconstitutional error if the reviewing court has fair assurance that the error did not influence the jury, or had but a slight effect, we overrule Bullard’s third point. 
 See 
Tex. R. App. P.
 44.2(b); 
Johnson v. State,
 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 

In his fourth point, Bullard claims he was denied effective assistance because his trial counsel failed to object to the above argument on the additional grounds that it brought more extraneous offenses before the jury.  Again, 
as discussed above, it is possible that defense counsel may have wished to avoid highlighting any alleged extraneous offenses involving Bullard to the jury.  Nothing in the record indicates what defense counsel’s trial strategy was.  Therefore, we cannot say that the alleged ineffectiveness is 
firmly founded in the record or that the record affirmatively demonstrates the alleged ineffectiveness.  
See Salinas
, 163 S.W.3d at 740
.  As a result, we overrule Bullard’s fourth point.
     

C. Oath to See That Justice Is Done 

In his final point, Bullard argues that the trial court erred when it overruled his objection to the State’s argument that the prosecutor had taken an oath to see that justice is done.  Specifically, the State’s argument was as follows:

[State:] Isn’t it true [the State’s witnesses] were arrested for this and that?  Now, I will tell you—because I have never hidden behind this, not one second—that my victim has been arrested for dope.  I started from opening statement.  Remember what I said?  This is a cold case.  Business was good in Fort Worth in 1990, especially the drug business.  I never for one second hid that from you because that’s the truth, and that’s the way I prosecute my cases.  I bring you the truth.  Because I take an oath, and it is a separate oath from what the defense attorney takes.  It is an oath to see that justice is done. 

[Defense Counsel:] Object, Your Honor, we are both officers of the court.  I am also going to object to attacking the client over defense counsel’s shoulders and also a misstatement.

[Trial Court:] Overruled.

[State:] I take an oath to see that justice is done.  I don’t take an oath to convict innocent people.  And how would I abide by my oath, an oath that I hold sacred, to convict an innocent man?  I wouldn’t.  And that would be a violation of my oath.  

The State again argues that this was a proper response to defense counsel’s numerous insinuations during argument that the State had kept evidence hidden from the jury.  

The State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith or insincerity during argument.  
Wilson
, 938 S.W.2d at 61.  Uninvited and unsubstantiated accusations of misconduct directed at a defendant’s attorney are manifestly improper because they serve to inflame the minds of the jury to the defendant’s prejudice.  
McMurrough v. State
, 995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  A prosecutor runs a risk of improperly striking a defendant over the shoulders of counsel when the argument personally impugns opposing counsel’s character.  
Mosley
, 983 S.W.2d at 259.  
It is manifestly improper and prejudicial to the defendant for a prosecutor to contrast the ethical obligations of prosecutors with those of defense attorneys.  
Id. 
at 258.

While defense counsel is protected from unwarranted attack by the prosecution, the prohibition “does not create a sanctuary to which defense counsel may retreat with immunity and thereby deny the prosecutor the right to reply to counsel’s argument.”  
Stokes v. State
, 506 S.W.2d 860, 864 (Tex. Crim. App. 1974).  Therefore, a prosecutor is entitled to respond to an argument by defense counsel that suggests impropriety on the part of the State.  
See Lange v. State
, 57 S.W.3d 458, 467 (Tex. App.—Amarillo 2001, pet. ref’d) (holding that prosecutor’s reference to having taken an oath to uphold justice was permissible response to defense counsel’s suggestion that prosecution had improperly coached witness); 
Sandoval v. State
, 52 S.W.3d 851, 858 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (holding that it was permissible for the prosecutor to respond to defense counsel’s suggestion that the prosecution manipulated the testimony of a witness).  Furthermore, this court has
 previously indicated that a prosecutor’s comment regarding his or her oath to see that justice is done is unobjectionable when it is done in response to defense counsel.  
See
 
Harris v. State
, 122 S.W.3d 871, 887 (Tex. App.—Fort Worth 2003, pet. ref’d).  

Here, the State was properly allowed to respond to defense counsel’s argument.  
Defense counsel focused his closing argument on the evidence and witnesses that the State did not present at trial.  Repeatedly, the defense commented that “the State didn’t bring it to you.”  For example, 
defense counsel consistently hammered on the State’s failure to call certain witnesses.
(footnote: 7)  He indicated that this was because the State did not want the truth to come out.  Moreover, portions of defense counsel’s argument could be characterized as accusing the State of withholding evidence.
(footnote: 8)  Under such circumstances, the prosecutor was allowed to defend herself by pointing out that she had not withheld evidence and, in fact, had taken an oath to see that justice was done.  Accordingly, the trial court did not err when it overruled Bullard’s objection.  We overrule Bullard’s fifth point.     

VI.  Conclusion

Having overruled Bullard’s five points, we affirm the judgment of the trial court.  

PER CURIAM

PANEL F: MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: October 4, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Affiliated with the south side were Bullard, Fred Branch, the Carter brothers (including the deceased Morgan Carter), and the Skinners.  Affiliated with the east side were Larry Embry (the deceased in this case), Marvin Brown (also deceased), Jason Dow, and L.A. Ron’s crew.

3:
Carter was killed at a gambling shack on Miller Avenue in Fort Worth, Texas.

4:
Brown’s body was found in his car, which had been riddled with bullets.  The driver and passenger side windows were shattered, and all four tires had been shot flat.  Jason Dow, a passenger in the front seat of the car, was wounded.  Two other young men in the back seat escaped unharmed from the drive-by shooting.

5:
Bullard was referring to Marvin Brown, whom everyone believed was responsible for killing Morgan Carter.

6:
“Look at that
. Do you think you only have two statements from two snitches in 
all that material?”
  [Emphasis added.]

7:
“Now I told you in voir dire about another person, Ms. Howard.  The State didn’t dare bring her up here . . . . They didn’t dare bring her up here because she’s the source.  And she’s such an unreliable discreditable source they didn’t dare bring her to the witness stand.  Are they afraid to?  I don’t know.” 

“There are two other people in the back seat of that car.  What are they  going to tell us?  We will never know because the State didn’t bring them.” 

“Do you think there is an investigating detective assigned to that case?  Sure there was. . . . The State didn’t bring it to you.”

8:
“And you know how the State works.  [Chris Craven] doesn’t even know what detective he talked to when he gave his statement.  Can’t remember. We’ll never know.  The State didn’t bring you that either.” 

“ . . . and you know from Eric Taylor [the State] can feed you information just by questioning.  They come up with Craven.  That’s it.”