COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-099-CR

 

 

JAMES EDWIN BULLARD                                                      APPELLANT

A/K/A
JAMES E. BULLARD

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction 

In five points, Appellant
James Edwin Bullard a/k/a James E. Bullard appeals his conviction of
murder.  We affirm.

 

 








II.  Factual and Procedural History

In the fall of 1990, Fort
Worth=s south and east sides played host to the lucrative drug business, out
of which spawned turf wars and gang violence.[2]  Friction between rival south and east side
gangs escalated after the death of Dreyon Jones on November 3, 1990.  Jones belonged to L.A. Ron=s crew.  L.A. Ron, whose real
name was Ron Fisher, was a California transplant hoping to get a cut of the
booming drug business in Fort Worth.  In
response to Jones=s killing,
Morgan AYoungster@ Carter, a
member of a competing faction from the south side, was fatally shot the next
day.[3]  Word quickly spread that Marvin Brown, an
east side gang member, was responsible for killing Carter.  Brown was subsequently shot and fatally
wounded while stopped at the intersection of Riverside and Berry in Fort Worth,
Texas.[4]

 








A.  The Killing of Larry APolk@ Embry

Ten days later,
seventeen-year-old Larry APolk@ Embry was gunned down, and his body was found in Cobb Park, the same
area as the Brown killing and near Bullard=s neighborhood.  Like Brown,
Embry was a member of an east side gang. 
Investigators never believed that robbery was a motive in the killing
because there was cash in Embry=s hand and his car keys were on the ground near his body.

Fort Worth police detective
G.R. Gray testified that on November 16, 1990, he was dispatched to the 2800
block of Cobb Park West in south Fort Worth as a crime scene officer.  He saw the body of Embry lying face up on the
ground near a blue Pontiac Trans Am.  He
further testified that based on how the blood stains appeared, Embry had been
standing when he was shot.  Though no
casings were found at the scene, Detective Gray believed that Embry had been
killed with a shotgun.

B.  The Connection to Marvin Brown

The State offered evidence of
the death of Brown to show that Bullard had motive for the Embry killingCEmbry was a potential witness to the Brown killing. 








Detective Gray testified that
he worked both the Embry and Brown crime scenes.  Shell casings were recovered from the Brown
crime scene at the intersection of Riverside and Berry, and they appeared to
have all come from a 12-gauge shotgun. 
Tarrant County firearm examiner Ronald Singer testified that no shell
casings were recovered from Cobb Park, but the projectiles recovered from the
body of Embry were probably from a 12-gauge shotgun.  Tarrant County Chief Medical Examiner Nizam
Peerwani testified that both Embry and Brown were killed with a 12-gauge
shotgun.

C.  Admissions of Guilt

The State further offered
evidence that Bullard had admitted to multiple people that he had killed Brown
and Embry.  

Mark Carter, Morgan Carter=s older brother, testified that in 1997 Bullard told him that he Asmoked@ the guy who
had killed Morgan, as if it were a favor to Mark and his family.[5]  He further testified that Bullard admitted
shooting Embry in Cobb Park, saying that Fred Branch had set up the whole thing
and when Embry showed up, he shot him in the face.








Additionally, Chris Craven,
whom Bullard met while in the Tarrant County Jail, testified that Bullard had
disclosed to him that he had been extradited from California to stand trial in
a Acold case.@  Craven stated that Bullard asked him if an
ex-girlfriend could testify that he had admitted to her having killed
someone.  Bullard later told Craven that
he had shot Brown because Brown was Aplaying both sides of the fence@ by talking both to the Aguys from L.A. and to the guys [from Fort Worth].@  Bullard also admitted to
shooting Embry in the park, though he didn=t say which park, with a shotgun. 
Bullard told Craven that Embry was shot because he knew about the Brown
killing.

D.  Procedural History

Fifteen years after the
crime, Bullard was indicted for Embry=s murder, to which he pleaded not guilty.  After both the State and Bullard had
presented their respective cases, the jury found Bullard guilty of murder.  Prior to trial, Bullard elected to have the
trial court assess punishment in the event of a guilty verdict.  The trial court assessed Bullard=s punishment at confinement for life. This appeal followed.

III.  Limiting Instruction

In his first point, Bullard
claims that the trial court erred by denying his request for a limiting instruction
that would have limited the State=s use of the alleged extraneous offense.  In sum, Bullard argues that the trial court
abused its discretion by requiring Bullard=s counsel to craft a limiting instruction on the spot and by denying
him any limiting instruction contemporaneous with the admission of the
extraneous offense.








The State first cites us to Payton
v. State, which states that no limiting instruction is required when an
extraneous offense is offered to directly prove one of the main issues in an
indicted case such as motive, intent, or malice.  830 S.W.2d 722, 730 (Tex. App.CHouston [14th Dist.] 1992, no pet.). 
However, this court has held that ARule 105 of the Texas Rules of Evidence requires a limiting
instruction, upon proper request, when evidence is admitted for one purpose but
is not admissible for another purpose.@  King v. State, 189
S.W.3d 347, 356 (Tex. App.CFort Worth 2006, no pet.) (citing Tex.
R. Evid. 105(a) and Rankin v. State, 974 S.W.2d 707, 713 (Tex.
Crim. App. 1996)).  Here it is obvious
that the evidence was admitted for the purpose of proving Bullard=s motive.  However, without a
limiting instruction, it is possible that the jury considered this extraneous
act as direct evidence of Bullard=s guilt, that is, propensity evidence, rather than for the purpose for
which it was offered.  See Davis v.
State, 169 S.W.3d 673, 677 n.2 (Tex. App.CFort Worth 2005, no pet.). 
Moreover, the Court of Criminal Appeals has held that: 

[l]imiting
instructions given for the first time during the jury charge thus do not
constitute an efficacious application of Rule 105(a) since it allows for the
possibility that evidence will be used improperly in clear contravention to the
purpose of the rule.  Since limiting
instructions operate most effectively when given simultaneously with the
relevant evidence, it would not do to grant trial courts Adiscretion@ to
deliver those instructions, after they had been properly requested, at a less
opportune time. 

 








Rankin, 974
S.W.2d at 713.  Therefore, we hold that
Bullard was entitled to receive a limiting instruction when the extraneous
evidence was admitted.  

Nevertheless, Bullard was
still required to properly request such an instruction.  See King, 189 S.W.3d at 356.  He did not do so.  Instead, Bullard requested a limiting
instruction stating that the extraneous offense evidence would only be Arelevant if it was connected up later.@  This can in no way be read to
be a request that the extraneous offense evidence be considered only for the
purpose of motive.  Therefore, we hold
that Bullard=s complaint
to the trial court does not comport with his complaint on appeal.  See Heidelberg v. State, 144 S.W.3d 535,
537 (Tex. Crim. App. 2004) (holding that complaint at trial must comport with
complaint made on appeal); see also Adams v. State, 862 S.W.2d
139, 148 (Tex. App.CSan Antonio 1993, pet. ref=d) (stating that
complaint regarding limiting instruction at trial must comport with complaint
on appeal). 
Accordingly, we overrule Bullard=s first point.      

IV.  Ineffective Assistance of Counsel

In his second point, Bullard
argues that he was denied effective assistance of counsel because his trial
counsel failed to properly request a limiting instruction when the trial court
ruled that extraneous offense evidence was admissible. 

 








A. Standard of Review 

To establish ineffective
assistance of counsel, an appellant must show by a preponderance of the
evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). 








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688C89, 104 S. Ct. at 2065.  Review
of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct
fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.  Thompson,
9 S.W.3d at 813-14.  AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).

B. Application

Bullard complains that his
trial counsel provided ineffective assistance when he did not formulate
the proper wording for the requested limiting instruction regarding the
extraneous offense.  Bullard concedes
that oftentimes the record on direct appeal is not developed enough to support
an ineffective assistance claim, but he claims that this is one of the few
cases in which no such further development is needed.  The State responds that the record does not
reflect that trial counsel lacked a professional reason for not mentioning
motive when requesting the limiting instruction.  We agree. 









It is entirely plausible that
defense counsel may have wished to avoid requesting the instruction in such way
that would have highlighted  motive and
the extraneous offense to the jury. 
Nothing in the record indicates what defense counsel=s trial strategy was. 
Therefore, we cannot say that the alleged ineffectiveness is firmly
founded in the record, or that the record affirmatively demonstrates the
alleged ineffectiveness.  See Salinas,
163 S.W.3d at 740.  As a result, we
overrule Bullard=s second
point.

V.  Jury Argument

In his third and fifth points, Bullard contends that the
trial court erred by overruling his objections to jury arguments made by the
State during closing arguments. 
Specifically, Bullard argues that the trial court erred by overruling
his objections to the State=s arguments that
it had more information about Bullard that it could have brought to the jury
and that the prosecutor has taken an oath Ato see that
justice is done,@ which is an oath separate from that of
trial counsel.  Additionally, in his
fourth point, Bullard claims that he was denied effective assistance of counsel
when his trial counsel failed to properly object to the State=s argument that it
had more information about Bullard that it could have brought to the jury.    

A. Standard of Review - Jury Argument 

To be permissible, the State=s jury argument
must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; or (4)
plea for law enforcement.  Felder v.
State, 848 S.W.2d 85, 94-95 (Tex. Crim.
App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State,
493 S.W.2d 230, 231 (Tex. Crim. App. 1973). 









If a jury argument exceeds the bounds of proper argument,
the trial court=s erroneous overruling of a defendant=s objection is not
reversible error unless it affected the appellant=s substantial
rights.  Tex. R. App. P. 44.2(b); Martinez v. State, 17 S.W.3d
677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  In
determining whether the appellant=s substantial
rights were affected, we consider (1) the severity of the misconduct (i.e., the
prejudicial effect of the prosecutor=s remarks), (2)
curative measures, and (3) the certainty of conviction absent the
misconduct.  Martinez, 17 S.W.3d
at 692-93; Mosley, 983 S.W.2d at 259.

The invited argument rule permits prosecutorial argument
outside the record in response to defense argument that goes outside the
record.  Wilson v. State, 938
S.W.2d 57, 60-61 (Tex. Crim. App. 1996), abrogated on other grounds by
Motilla v. State, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).  A prosecutor may not stray beyond the scope
of the invitation, however.  Id.
at 61.  The idea of invited response is
not used to excuse improper comments but to determine the effect of the
comments on the trial as a whole.  Darden v. Wainwright, 477 U.S. 168, 182,
106 S. Ct. 2464, 2472 (1986).

 

 








B. AMore Information@ Argument 

The portion of the State=s argument that
Bullard felt was objectionable was as follows:

[State:] I want you to look at my
notebook, and for that matter look at that box down there as well.  You better believe there is a lot more about
this Defendant, but I brought you everything the law will allow me to bring
you.

 

[Defense Counsel:] I=m going to object to that. 
That=s outside the record and outside
the evidence.  She brought what she chose
to bring.            

 

[Trial Court:] Overruled.

 

[State:] I brought you
everything the law allows me to bring. 
Now, counsel for the defense would have you believe he can=t bring you witnesses.  Is that true? 
Has he not brought a single witness? 
No, of course not.  He brought you
five or six witnesses today.  Don=t you think if any of these police
officers or detectives were going to substantiate one thing that [defense
counsel] implied to you all, accused the witnesses of, he would have them up
here?  They are just across the street.

 

The
State responds that this argument was a response to defense counsel=s argument that
was as follows:

Do you think there is an
investigating detective assigned to that case? 
Sure there was.  It is
reasonable.  Where is he?  What did he investigate?  What did he come up with?  What did he not come up with?  The State didn=t bring it to you.  This happened in 1990.  Do you think there were investigating
detectives all along?  Sure.  Where are they?  How come they weren=t brought into the courtroom?  

 








And it is not our burden to do
it.  It is the State=s burden.  And I am going to tell you why they weren=t brought, I believe.  

 

It is a reasonable deduction that
they aren=t brought.  Look at that.  Do you think you only have two statements
from two snitches in all that material? 
The State doesn=t want them challenged on cross. 

 

The State doesn=t want to open up the case.  It is that simple. [Emphasis added.]

 

Furthermore,
the State contends that the theme running throughout defense counsel=s jury argument
was that there was a wealth of evidence and witnesses the State did not bring
because it did not want to open up the case or subject witnesses to
cross-examination.  

The State asserts that a prosecutor is entitled to respond
to an argument by defense counsel that suggests impropriety on the part of the
State, and that in doing so, the prosecutor may respond to a defense attorney=s outside the
record attacks by straying outside the record as well. 








We disagree
with the State=s position that defense counsel
went outside the record when he referenced witnesses that were being withheld
by the State.  In general, counsel is
permitted to comment on the opposing party=s failure to call certain witnesses.  See O=Bryan v. State, 591 S.W.2d 464, 479 (Tex. Crim.
App. 1979) (holding that a prosecutor, in argument, may comment upon the
defendant=s failure to call certain
witnesses).  Had the State referenced
only the defense=s failure to call certain witnesses
in its response, the comment at issue would have been permissible.  See id. 
However, the prosecutor ventured beyond permissible jury argument and
went outside the record when she informed the jurors that Athere was a lot more about this

 

Defendant, but I brought you
everything the law will allow me to bring you.@ 


While we agree with the State that a portion of defense
counsel=s remarks[6]
invited a response from the prosecution, we will not condone an improper
response.  Because the prosecution=s response
referenced inadmissible evidence, the comment was improper.  See Felder, 848 S.W.2d at 94-95.  Therefore, the trial court
erred in overruling the defendant=s objection.








Having found error, we must
determine whether the error had a substantial and injurious effect or influence
on the jury=s
verdict.  Martinez, 17 S.W.3d at 692-93; Mosley, 983 S.W.2d at 259.  In
determining whether a jury argument is extreme or harmful, we look at the
entire record to determine if there was a willful and calculated effort on the
part of the State to deprive Bullard of a fair and impartial trial.  See Wesbrook v. State, 29 S.W.3d 103,
115 (Tex. Crim. App. 2000); Cantu v. State, 939 S.W.2d 627, 633 (Tex.
Crim. App.), cert. denied, 522 U.S. 994 (1997); Johnson v. State,
604 S.W.2d 128, 135 (Tex. Crim. App. 1980) (panel op.).

To determine whether the State=s comment was harmful, we
must first evaluate the severity of the State=s remarks.  See Mosley, 983 S.W.2d at 259.  In the instant case, there was no willful or
calculated effort on the part of the State to deprive Bullard of a fair and
impartial trial.  While the prosecutor=s comment was improper, it
was also impromptu and made only in response to remarks by Bullard=s counsel.  Because the State=s comment was neither willful
nor calculated, we hold that the severity of the comment was minimal.  See Wesbrook, 29 S.W.3d at 115; Martinez, 17 S.W.3d at 692-93.  








In making this determination, we have taken into consideration the
authority to which Bullard directs our attention.  Bullard relies on Berryhill v. State,
501 S.W.2d 86, 87 (Tex. Crim. App. 1973), to support his conclusion that the
State=s comment was severe.  In that case, the prosecutor used
hypothetical questions when he cross-examined the appellant.  Id. 
The prosecutor then implied to the jury that evidence existed that would
support the matters set forth in his hypothetical questions, but he stated that
he could not bring that evidence to them. 
Id.  The prosecutor then
invited the jury to speculate on what those matters were.  Id. 
The Texas Court of Criminal Appeals stated that A[an a]rgument injecting
matters not in the record is clearly improper; but argument inviting
speculation is even more dangerous 
because it leaves to the imagination of each juror whatever extraneous >facts= may be needed to support a
conviction.@  Id. 
The court held that the prosecutor=s argument implied the
existence of incriminating evidence that could not be introduced before the
jury, so it reversed the appellant=s conviction.  Id.

Bullard also directs the court to Boyde v. State, 513
S.W.2d 588, 591 (Tex. Crim. App. 1974). 
There, the prosecutor referenced specific facts and witnesses that the
grand jury had been permitted to hear but were inadmissible as to the sitting
jury.  Id.  The prosecutor specifically referred to two
witnesses who gave testimony before the grand jury.  Id. 
The Texas Court of Criminal Appeals reversed the conviction, reasoning
that the defendant was harmed when the prosecutor conveyed to the jury that
there was evidence of guilt other than that which was before the jury.  








We do not condone the prosecutor=s words, but neither do we
find that they were as prejudicial as the comments in Berryhill and Boyde.  See Berryhill, 501 S.W.2d at 87; Boyde,
513 S.W.2d at 591.  The case before us is
distinguishable from both cases Bullard cites to support his argument.  First, the prosecutor in this case did not
purposefully set forth inadmissible evidence before the jury like the
prosecutor in Berryhill did.  The
State=s comment was not a willful
and calculated effort on the part of the State to invite speculation regarding
inadmissible evidence of Bullard=s guilt.  AYou better believe there is a
lot more about this defendant@ would seem to invite
speculation in general, but not Afocused@ speculation like the cases
Bullard cites.  The prosecutor simply
made a single improper comment in response to opposing counsels remarks.  See Wesbrook, 29 S.W.3d at 115.  Furthermore, the prosecutor=s comment did not inject new
information into the case like the prosecutor in Boyde did.  Here, the prosecutor did not specifically
refer to facts, witnesses, or testimony that the jury was not permitted to
hear.  See McKay v. State, 707
S.W.2d 23, 36 (Tex. Crim. App. 1985) (holding that to constitute reversible
error, the jury argument must be extreme or manifestly improper, or inject new
and harmful facts into evidence). 
Furthermore, the prosecutor commented on the inadmissible evidence only
a single time, further demonstrating that her remarks were not the result of a
willful and calculated effort to invite speculation on Bullard=s guilt and that any
potential for prejudice was minimized. 
After careful evaluation, we find that the severity of the misconduct is
relatively small.  The first factor does
not weigh heavily in Bullard=s favor.  See Mosley, 983 S.W.2d at 260.

Turning to the second factor, we find that no curative action was
taken as the trial court overruled Bullard=s objection. 








In evaluating the third factor, which examines the certainty of a
conviction without the misconduct, we find that it weighs heavily in favor of
the State.  There was an abundance of
evidence upon which the jury could have based its guilty verdict, and thus we
conclude that the outcome would not have changed had the improper remark not
been made.  The record reflects that
Bullard admitted to several individuals that he had committed the murder of
Larry Embry.  Bullard admitted to Mark
Carter that he had shot Embry in Cobb Park, saying that another guy had set the
whole thing up and when Embry showed up, he shot him in the face.  Bullard also told fellow inmate, Chris
Craven, that he shot Larry Embry with a shotgun in a Fort Worth park.  Other evidence corroborating Bullard=s admissions include the
testimony of Tarrant County firearm examiner Ronald Singer and Tarrant County
Chief Medical Examiner Nizam Peerwani. 
Singer testified that the projectiles recovered from the body of Embry
were probably from a 12-gauge shotgun, while Peerwani testified that Embry was
killed with a 12-gauge shotgun.  In light
of this testimony and the strength of the State=s case, we do not believe
that Bullard=s substantial rights were
affected by the prosecutor=s reference to inadmissible
evidence.    








Also significant was the fact that once the prosecutor made the
improper comment, she did not dwell on the inadmissible evidence.  She quickly moved on to refer to the absence
of certain defense witnesses.  The
prosecutor did not revisit the comment she made concerning the inadmissible
evidence at any point during the remainder of the trial.  We agree with the State that the impact of
the prosecutor=s comment was minimal when
compared with the impact of the rest of the evidence.  After consideration of these facts, we
determine that there is a high degree of certainty that Bullard would have been
convicted without the State=s improper comment.

After evaluating the three factors, we conclude that the trial
court=s error in overruling
Bullards=s objection did not have a
substantial or injurious effect on the jury=s verdict and did not affect
Bullard=s substantial rights.  See King, 953 S.W.2d at 271.  Because a conviction should not be reversed
for nonconstitutional error if the reviewing court has fair assurance that the
error did not influence the jury, or had but a slight effect, we overrule
Bullard=s third point.  See Tex.
R. App. P. 44.2(b); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998). 








In his fourth point,
Bullard claims he was denied effective assistance because his trial counsel
failed to object to the above argument on the additional grounds that it
brought more extraneous offenses before the jury.  Again, as discussed above, it is
possible that defense counsel may have wished to avoid highlighting any alleged
extraneous offenses involving Bullard to the jury.  Nothing in the record indicates what defense
counsel=s trial strategy was.  Therefore, we cannot say that the alleged
ineffectiveness is firmly founded in the record or that the record
affirmatively demonstrates the alleged ineffectiveness.  See Salinas, 163 S.W.3d at 740.  As a result, we overrule Bullard=s fourth point.     

C. Oath
to See That Justice Is Done 

In his final point,
Bullard argues that the trial court erred when it overruled his objection to
the State=s argument that the prosecutor had taken an oath to see
that justice is done.  Specifically, the
State=s argument was as follows:

[State:]
Isn=t it true [the State=s
witnesses] were arrested for this and that? 
Now, I will tell youCbecause
I have never hidden behind this, not one secondCthat
my victim has been arrested for dope.  I
started from opening statement.  Remember
what I said?  This is a cold case.  Business was good in Fort Worth in 1990,
especially the drug business.  I never
for one second hid that from you because that=s
the truth, and that=s
the way I prosecute my cases.  I bring
you the truth.  Because I take an oath,
and it is a separate oath from what the defense attorney takes.  It is an oath to see that justice is done. 

 

[Defense Counsel:]
Object, Your Honor, we are both officers of the court.  I am also going to object to attacking the
client over defense counsel=s shoulders and also a misstatement.

[Trial Court:]
Overruled.

[State:]
I take an oath to see that justice is done. 
I don=t take an oath to
convict innocent people.  And how would I
abide by my oath, an oath that I hold sacred, to convict an innocent man?  I wouldn=t.  And that would be a violation of my
oath.  








The State again argues that
this was a proper response to defense counsel=s
numerous insinuations during argument that the State had kept evidence hidden
from the jury.  

The State may not
strike at a defendant over the shoulders of his counsel or accuse defense
counsel of bad faith or insincerity during argument.  Wilson, 938 S.W.2d at 61.  Uninvited and unsubstantiated accusations of
misconduct directed at a defendant=s attorney are manifestly improper because they serve to
inflame the minds of the jury to the defendant=s
prejudice.  McMurrough v. State,
995 S.W.2d 944, 947 (Tex. App.CFort Worth 1999, no pet.). 
A prosecutor runs a risk of improperly striking a defendant over the
shoulders of counsel when the argument personally impugns opposing counsel=s
character.  Mosley, 983 S.W.2d at
259.  It is manifestly improper and
prejudicial to the defendant for a prosecutor to contrast the ethical
obligations of prosecutors with those of defense attorneys.  Id. at 258.








While defense counsel
is protected from unwarranted attack by the prosecution, the prohibition Adoes
not create a sanctuary to which defense counsel may retreat with immunity and
thereby deny the prosecutor the right to reply to counsel=s
argument.@  Stokes v. State,
506 S.W.2d 860, 864 (Tex. Crim. App. 1974). 
Therefore, a prosecutor is entitled to respond to an argument by defense
counsel that suggests impropriety on the part of the State.  See Lange v. State, 57 S.W.3d 458, 467
(Tex. App.CAmarillo 2001, pet. ref=d)
(holding that prosecutor=s reference to having taken an oath to uphold justice was
permissible response to defense counsel=s suggestion that prosecution had improperly coached
witness); Sandoval v. State, 52 S.W.3d 851, 858 (Tex. App.CHouston
[1st Dist.] 2001, pet. ref=d) (holding that it was permissible for the prosecutor to
respond to defense counsel=s suggestion that the prosecution manipulated the testimony
of a witness).  Furthermore, this court
has previously indicated that a prosecutor=s
comment regarding his or her oath to see that justice is done is
unobjectionable when it is done in response to defense counsel.  See Harris v. State, 122 S.W.3d
871, 887 (Tex. App.CFort Worth 2003, pet. ref=d).  








Here, the State was
properly allowed to respond to defense counsel=s
argument.  Defense counsel focused his
closing argument on the evidence and witnesses that the State did not present
at trial.  Repeatedly, the defense
commented that Athe State didn=t bring it to you.@  For example, defense counsel consistently hammered on the State=s
failure to call certain witnesses.[7]  He indicated that this was because the State
did not want the truth to come out. 
Moreover, portions of defense counsel=s
argument could be characterized as accusing the State of withholding evidence.[8]  Under such circumstances, the prosecutor was
allowed to defend herself by pointing out that she had not withheld evidence
and, in fact, had taken an oath to see that justice was done.  Accordingly, the trial court did not err when
it overruled Bullard=s objection.  We overrule Bullard=s
fifth point.     

VI.  Conclusion

Having overruled
Bullard=s five points, we affirm the judgment of the trial
court.  

PER CURIAM

PANEL F:    MCCOY,
HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED: October 4, 2007











[1]See Tex. R. App. P. 47.4.





[2]Affiliated
with the south side were Bullard, Fred Branch, the Carter brothers (including
the deceased Morgan Carter), and the Skinners. 
Affiliated with the east side were Larry Embry (the deceased in this
case), Marvin Brown (also deceased), Jason Dow, and L.A. Ron=s
crew.





[3]Carter
was killed at a gambling shack on Miller Avenue in Fort Worth, Texas.





[4]Brown=s
body was found in his car, which had been riddled with bullets.  The driver and passenger side windows were
shattered, and all four tires had been shot flat.  Jason Dow, a passenger in the front seat of
the car, was wounded.  Two other young
men in the back seat escaped unharmed from the drive-by shooting.





[5]Bullard
was referring to Marvin Brown, whom everyone believed was responsible for
killing Morgan Carter.





[6]ALook at that. Do you think you only have two
statements from two snitches in all that material?@  [Emphasis added.]





[7]ANow I
told you in voir dire about another person, Ms. Howard.  The State didn=t
dare bring her up here . . . . They didn=t
dare bring her up here because she=s the source.  And she=s such an unreliable
discreditable source they didn=t dare bring her to the
witness stand.  Are they afraid to?  I don=t know.@ 

 

AThere
are two other people in the back seat of that car.  What are they 
going to tell us?  We will never
know because the State didn=t bring them.@ 

 

ADo
you think there is an investigating detective assigned to that case?  Sure there was. . . . The State
didn=t
bring it to you.@





[8]AAnd
you know how the State works.  [Chris
Craven] doesn=t
even know what detective he talked to when he gave his statement.  Can=t remember. We=ll
never know.  The State didn=t
bring you that either.@ 

 

A
. . . and you know from Eric Taylor [the State] can feed you
information just by questioning.  They
come up with Craven.  That=s it.@